IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | | |
|---|---|---|
| JUDY WHITE and GARY WHITE, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 13-2173-JDT/tmp |
| | ) | |
| DELORES STEPHENS, et al., | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

---

**REPORT AND RECOMMENDATION**

---

Before the court by order of reference are plaintiffs Judy and Gary White's *Ex Parte* Motion for Extraordinary Emergency Relief, filed on March 19, 2013 (ECF No. 3) and Renewed *Ex Parte* Motion for Extraordinary Emergency Relief, filed on April 15, 2013 (collectively, "Motions for Emergency Relief"). (ECF No. 35.) Plaintiffs also filed a document styled "Supplement to Renewed *Ex Parte* Motion for Extraordinary Emergency Relief" on May 17, 2013, which relates to these motions. (ECF No. 39.)

For the reasons below, the court recommends that the plaintiffs' motions be denied.[1]

---

[1]The complaint, which was filed on March 19, 2013, is 94 pages long and includes over 250 pages of exhibits. Under the Prison Litigation Reform Act, courts are required to conduct an initial screening of a prisoner's civil complaint if it is filed *in forma pauperis* or if it seeks redress from a governmental entity or official. The court must dismiss the complaint if it is determined to be frivolous or malicious, if it fails to state a claim on which

## I. BACKGROUND

The allegations set forth below are based solely on the plaintiff's complaint. The defendants have not yet filed an answer to the complaint and therefore have not had an opportunity to defend against these allegations. The summary below should not be construed as facts accepted as true by the court.

Judy White is a resident of Jefferson County, Alabama. Her 66 year old husband, Gary White, is a federal prisoner currently serving a 120 month sentence for convictions on federal-funds bribery and conspiracy charges.[2] From September 2010 to December 2011, he was incarcerated at the federal prison in Edgefield, South Carolina. Beginning on December 28, 2011, Mr. White was moved to federal prisons in Atlanta, Georgia, Oklahoma City, Oklahoma, and Millington, Tennessee. In February 2013, he was moved to the federal prison in Forrest City, Arkansas, where he is currently housed. On March 19, 2013, the plaintiffs jointly filed a *pro se*

---

relief may be granted, or if it seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. Even though a filing fee has been paid, because Mr. White is a prisoner and seeks redress from a variety of government entities and officials, his claims are subject to screening. Given the emergency relief sought in the motions, however, the court will address the motions even though the complaint has not yet been screened by the district court.

[2]For a background of the circumstances surrounding Mr. White's conviction, see United States v. White, 663 F.3d 1207 (11th Cir. 2011), in which the Court of Appeals affirmed Mr. White's conviction and sentence. Mr. White's petition for writ of certiorari was denied by the Supreme Court. White v. United States, 133 S. Ct. 646 (2012).

complaint against numerous federal prison officials, prison medical staff, prison counselors and case managers, prison facilities, Attorney General Eric Holder, the Department of Justice, and President Barack Obama. Plaintiffs allege that Mr. White was transferred to various federal prison facilities without notice to Mrs. White or to Brian Cloud (his civil attorney in Alabama). They claim Mr. White was harmed and injured by being locked in solitary confinement; denied his prescribed medication; denied adequate food, shelter and clothing; and subjected to outrageous and abusive treatment, including being compelled to stand outside in freezing temperatures in the rain dressed only in a thin paper jumpsuit while shackled and handcuffed. They contend that on numerous occasions, Mrs. White and Mr. Cloud have been denied access to Mr. White, including being denied visitation, telephone calls, and email communications. Plaintiffs claim that prison personnel have repeatedly harassed Mrs. White when she has gone to visit her husband in prison, including subjecting her to "unwarranted physical searches, including assaulting and sexually assaulting Mrs. White, touching every part of Mrs. White's body and groping the crotch of Mrs. White's pants on numerous occasions." Other forms of abuse and harassment alleged in the complaint include denying Mr. White the chance to attend his mother's funeral and not allowing him to leave prison to be with his wife when she had to undergo major surgery. Plaintiffs also make numerous allegations

regarding fraud and corruption within the Bureau of Prisons ("BOP").

Plaintiffs claim that various prison officials and medical personnel have withheld necessary prescribed medication, falsified his medical records, wrongfully disclosed his medical records, and refused to provide Mrs. White and Mr. Cloud with his medical records despite repeated requests for those records. Plaintiffs allege that prior to his imprisonment in 2010, Mr. White had a prostate-specific antigen ("PSA") level of 2.0, and that as of about six months ago, his PSA level has risen to 5.32, indicating that he might have prostate cancer. They contend that in November 2012, Mr. White was finally allowed to be seen by a private, non-BOP urologist in Memphis, Tennessee. During that doctor's visit, the urologist called Mrs. White, at which time the three of them spoke over the speaker phone about Mr. White's medical condition and treatment. Plaintiffs claim that after Mr. White returned to the prison from that doctor's visit, prison officials took away the prescription samples he had received from the urologist. He was later placed in solitary confinement, allegedly because the Whites had engaged in discussions about a pending lawsuit when he was seen by the urologist, in violation of BOP regulations. Plaintiffs claim Mr. White was brought before the Disciplinary Hearing Officer ("DHO") without notice, and that the hearing itself was conducted without permitting Mr. White to call witnesses, conduct research,

or present evidence in his defense. At the conclusion of the hearing, Mr. White was punished with, among other penalties, the loss of six months of visitation, telephone, and email privileges. Plaintiffs claim that the prison has denied Mr. White his "DHO Report" and has prohibited him from filing an appeal of the DHO's ruling.[3]

The complaint includes 44 counts. For counts 1 through 35, the plaintiffs attempt to incorporate by reference counts 1 through 35 contained in other complaints relating to Mr. White's prison conditions that they filed in the District Court for the District of South Carolina.[4] The remaining counts allege causes of action for conspiracy, obstruction of justice, violation of the Americans with Disabilities Act ("ADA"), assault, conversion of property, theft, "outrage," intentional infliction of emotional distress, false imprisonment, and 42 U.S.C. § 1983 claims based on Eighth

---

[3]Attached to the complaint is an affidavit and "addendum to 1/11/13 affidavit" signed by Mrs. White, which describes the November 2012 urologist visit and the discipline imposed by the prison against Mr. White as a result of the phone call that took place between the urologist and the Whites during the doctor's visit.

[4]The civil docket for the District of South Carolina reflects two cases filed by the Whites against prison officials, White v. Mitchell (case no. 8:12-cv-2840-TMC, complaint filed Oct. 1, 2012) and White v. Miller (case no. 8:11-cv-00144-HMH, complaint filed Jan. 1, 2011). On January 11, 2013, the court dismissed the Mitchell case, and no appeal was taken. On June 20, 2011, the court dismissed Miller. The Whites appealed the dismissal in Miller, and the Court of Appeals for the Fourth Circuit affirmed the dismissal. See White v. Mackelburg, 459 F. App'x 285 (4th Cir. 2011).

Amendment violations. Plaintiffs ask that the court release Mr. White from custody, declare the Prison Litigation Reform Act ("PLRA") unconstitutional, and award damages.

In the instant Motions for Emergency Relief, the plaintiffs seek extraordinary relief in the form of a preliminary injunction.[5] The motions repeat many of the allegations contained in the complaint, including allegations that Mr. White has been "tortured," denied necessary medical treatment and prescriptions, denied visitation and other forms of communication with his wife and Mr. Cloud, and retaliated against by prison officials. Plaintiffs further allege that within the past sixty days, at least three other fellow prisoners housed in the Forrest City prison have died or have suffered severe illness as a result of the prison's withholding of medical care and treatment. Plaintiffs seek essentially four forms of preliminary injunctive relief: (1) a court order for Mr. White's release from prison and into the care and custody of Mrs. White; (2) an order preventing the defendants from inflicting further harm on Mr. White; (3) an order requiring the BOP to allow Mr. White to undergo an independent medical evaluation, including requiring that all prescribed medication be provided to him; and (4) an order preventing the defendants from

---

[5]According to the plaintiffs, they have served copies of the motions on the defendants, and have attached a certificate of service. However, it is unclear whether the defendants have been properly served. None of the defendants have responded to the motions.

interfering with Mr. White's visitation and communication privileges.

## II. PROPOSED CONCLUSIONS OF LAW

Under Federal Rule of Civil Procedure 65, the court must apply a four-factor test to determine whether to issue a preliminary injunction. The court must consider: (1) whether the party seeking the order has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. Third Party Solutions, Inc. v. Express Scripts, Inc., 298 F. App'x 402, 403 (6th Cir. 2008) (citing Certified Restoration Dry Cleaning Network v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007)); Overstreet v. Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566, 573 (6th Cir. 2002); Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000). These factors "do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief," nor is any one factor controlling. Frisch's Rest. Inc. v. Shoney's, Inc., 759 F.2d 1261, 1263 (6th Cir. 1984); see also Ne. Ohio Coal. for Homeless and Serv. Emps. Int'l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006); Gonzales v. Nat'l Bd. of Med. Examiners, 225 F.3d 620, 625 (6th Cir. 2000). "Temporary restraining orders and preliminary

injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." Ciavone v. McKee, No. 1:08cv771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing Overstreet, 305 F.3d at 573); see also Jones v. Caruso, 569 F.3d 258, 265 (6th Cir. 2009); Leary, 228 F.3d at 736.

This already stringent burden is even more difficult to meet where, as here, a plaintiff seeks an injunction not merely to maintain the status quo pending resolution of the case but to obtain affirmative relief. As the Supreme Court has explained, the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). Because of this, courts have identified three types of particularly disfavored preliminary injunctions: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." Schrier v. Univ. of Colorado, 427 F.3d 1253, 1259 (10th Cir. 2005). Motions seeking such preliminary injunctive relief must be more closely scrutinized than the already-disfavored motion for preliminary junction which seeks to maintain the status quo. See id.; Johnson v. Kay, 860 F.2d 529, 540 (2d Cir. 1988).

Moreover, the PLRA imposes additional restrictions on a

prisoner's request for a preliminary injunction. It requires that the prisoner's "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(2).

The court submits that the plaintiffs have not shown any (much less a strong) likelihood of success on the merits because Mrs. White lacks standing to pursue Mr. White's prison condition claims. The constitutional and prudential components of standing must be satisfied before a litigant may seek redress in a federal court. Hill v. Pa. Dep't of Corr., No. 13-1066, 2013 WL 1320413, at *1 (3d Cir. Apr. 3, 2013). "Three components comprise the 'irreducible constitutional minimum of standing': an 'injury in fact' that is concrete and particularized and actual or imminent; a causal connection between the injury and the complained-of conduct; and a likely, not speculative, redressability of the injury through a favorable decision." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "Prudential standing requires, inter alia, that a litigant assert his or her own legal rights and not rely on the rights or interests of third parties." Id. (citing Warth v. Seldin, 422 U.S. 490, 499 (1975)). In Hill, plaintiff Donna Hill filed a § 1983 complaint on behalf of her husband, Dwayne Hill, an inmate with the Pennsylvania Department of Corrections. Mrs. Hill claimed that the prison where her husband

was housed violated Mr. Hill's civil rights under the Eighth and Fourteenth Amendments because the prison stopped giving Mr. Hill his medication, changed his mental health code for a non-medical reason, moved him from a single-cell to a double-cell, harassed him, employed an insufficient number of mental health professionals, and employed underqualified mental health professionals. Mrs. Hill alleged that the defendants' actions exacerbated Mr. Hill's mental health condition, caused him to have disciplinary problems, and resulted in a suspension of mail and visiting privileges between the Hills. Id. The Magistrate Judge submitted a report and recommendation, in which he recommended that the case be dismissed because Mrs. Hill lacked standing to bring claims on behalf of her husband. The recommendation was adopted by the District Judge, and the Third Circuit affirmed, stating that "[t]he complaint primarily alleged violations of Mr. Hill's constitutional rights; thus insofar as Mrs. Hill sought to assert Mr. Hill's rights, the District Court correctly concluded that she lacked standing." Id. at 2.

Like the plaintiffs in Hill, the Whites' complaint primarily alleges violations of Mr. White's constitutional rights, and therefore Mrs. White lacks standing to bring these claims on behalf of her husband. Although Mrs. White may have standing to bring certain claims that are based on violations of her rights - such as her claim that she was subjected to unreasonable searches and

seizures by prison personnel when she visited her husband in prison and her claim that the prison is not ADA compliant because it does not provide her with access to handicapped parking - those claims are not relevant to the injunctive relief sought in the Motions for Emergency Relief.

In White v. Miller, case no. 8:11-144-HMH, which is one of the cases the Whites filed in the District of South Carolina (and which contains similar allegations as the instant case), the court held that Mrs. White lacked standing to pursue Mr. White's claims. In an order entered on June 20, 2011, the court stated that "Plaintiff Judy White makes no allegation that she is a prisoner suffering under the same prison conditions she attempts to litigate on behalf of her husband. Because Plaintiff Judy White cannot maintain this case for lack of standing, and because Plaintiff Gary L. White has failed to prosecute this case, the case is dismissed without prejudice." Because Mrs. White lacks standing to assert Mr. White's claims, the first factor weighs heavily in favor of denying the motions, easily outweighing all of the other three factors. The court recommends that the motions be denied.

Moreover, the fact that Mr. White's signature appears on the complaint and Motions for Emergency Relief does not negate the court's concerns regarding the lack of standing, because it appears that Mrs. White signed those documents on behalf of her husband. According to the complaint, the Whites have had very little contact

with each other since January 2013, as the prison has prohibited Mrs. White from contacting her husband, other than through U.S. mail. The address on record for both plaintiffs, and where all court documents are sent, is Mrs. White's address in Leeds, Alabama. Mrs. White has taken the position that she is Mr. White's "attorney in fact," both in this litigation and in their cases filed in South Carolina, which she apparently believes allows her to sign and file motions on behalf of Mr. White. Regarding the motions for emergency relief filed in Miller, the court, in denying those motions, found that Mrs. White improperly signed those motions on behalf of her husband. See White v. Miller, No. 8-11-144-HMH-KFM, 2011 WL 2066605, at *1 (D.S.C. May 4, 2011), report and recommendation adopted, 2011 WL 2133700 (D.S.C. May 26, 2011). Based on this record, the court can only conclude that the complaint and the Motions for Emergency Relief have been signed by Mrs. White on behalf of her husband, which she cannot do.[6] See 28 U.S.C. § 1654; see also Garrison v. Fleet Fin., Inc., No. 97-6422,

---

[6]In the court's Order Denying Plaintiffs' Motion for Appointment of Counsel (ECF No. 34), the court cautioned the plaintiffs that "[f]ederal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. That statute provides that, "[i]n all courts of the United States, the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." Id. This statute does not permit plaintiffs to appear *pro se* where interests other than their own are at stake. Shepherd v. Wellman, 313 F.3d 963, 970 (6th Cir. 2002) (citing Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998)).

1999 WL 282626, at *1 (6th Cir. Apr. 30, 1999); Johns v. Cnty. of San Diego, 114 F.3d 874, 876 (9th Cir. 1997); Cochran v. Nelson, No. 93-3521, 1994 WL 28648, at *3 (6th Cir. Feb. 1, 1994); Peak v. Smith, No. 91-5902, 1992 WL 60194, at *1 (6th Cir. Mar. 27, 1992). On this separate basis, the motions should be denied.

In addition to the lack of standing by Mrs. White, the court submits that the Motions for Emergency Relief should be denied on other grounds. As mentioned above, the plaintiffs filed a similar motion for emergency relief in Miller. The Magistrate Judge, in recommending that the Whites' emergency motion be denied, found as follows:

> The motion requests a long list of orders, on pages 14-17. The requests which particularly appear to pertain to the Motion for Injunctive Relief and/or Restraining Order include requests for orders that: prevent the Defendants from carrying out punishment against Plaintiff Gary L. White; reverse the termination of Plaintiffs' visitation rights; reinstate telephone, etc. privileges necessary for Plaintiffs to communicate; prevent Defendants from retaliating against Plaintiffs for filing this lawsuit, and other requests. While Plaintiffs allege punishment and retaliation they may suffer at the hands of Defendants, they do not make a clear showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). In fact, they do not make any sort of allegation that can be construed as an argument that Plaintiffs face immediate and irreparable injury, or if so, what these injuries might entail. Additionally, an ex parte temporary restraining order to maintain the status quo would not assist Plaintiffs in regaining visitation and the privileges, as the status quo is that those privileges have already been removed.
>
> A failure to establish any of the elements necessary for relief is fatal to the request for a temporary

-13-

restraining order.  Plaintiffs have not established that immediate, irreparable harm is likely, so their motion should be denied.

White v. Miller, No. 8-11-144-HMH-KFM, 2011 WL 1168045, at *2-3 (D.S.C. Mar. 7, 2011) (internal citation omitted).  The District Judge overruled the plaintiffs' objections and adopted the report and recommendation:

> After a thorough review, the Plaintiffs have failed to make a clear showing that they are likely to suffer irreparable harm.  Aside from the Plaintiffs' self-serving allegations that the Defendants opened Mr. White's mail under the guise that it contained improper postage or was improperly addressed, there is no objective evidence that the Defendants improperly opened Mr. White's legal mail.  Further, the Plaintiffs have filed numerous pleadings in the instant case indicating that the Defendants are interfering with the Plaintiffs' access to the courts.  In addition, the Plaintiffs generally allege that Mr. White "has been warned that he is in 'extreme danger' from and is 'marked' by the Defendants.  He has been warned that the prison employees and Defendants will plant contraband in his living quarters, having previously done so in retaliation against others who have attempted to exercise their rights and privileges." (Objections 10.) The Plaintiffs fail to specifically identify any person that has threatened Mr. White.  At best, it appears that other inmates have discussed these issues with Mr. White. Moreover, the fact that Mr. White has been threatened with placement in solitary confinement fails to establish a threat of immediate harm.  There are numerous reasons for placement of an inmate in solitary confinement. In addition, it appears that Mr. White has been placed in solitary confinement.  The Plaintiffs' remaining allegations are also conclusory and fail to show that the Plaintiffs will suffer irreparable harm absent an injunction.

White v. Miller, No. 8:11-144-HMH-KFM, 2011 WL 1168428, at *1 (D.S.C. Mar. 29, 2011).  This decision was affirmed on appeal to the Fourth Circuit.  White v. Mackelburg, 459 F. App'x 285 (4th

-14-

Cir. 2011).

The Whites' Motions for Emergency Relief filed in the present case should be denied because the extraordinary relief sought by the plaintiffs is not warranted. With respect to the plaintiffs' request for the release of Mr. White from prison, the Sixth Circuit has stated that injunctive relief in the form of release from custody is not available through an action filed pursuant to § 1983. Alstatt v. Smith, No. 91-579, 1991 WL 193747, at *2 (6th Cir. Oct. 1, 1991). "'When a state prisoner challenges 'the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.'" Id. ((quoting Preiser v. Rodriquez, 411 U.S. 475, 490 (1973)); see also Lineberry v. United States, 380 F. App'x 452, 453 (5th Cir. 2010) (affirming the dismissal of a federal prisoner's habeas petition challenging the conditions of his confinement, holding that the proper vehicle is a civil rights action and that "[t]he proper remedy [if the prisoner's challenges to the conditions proved to be true] is to require the discontinuance of a practice or to require the correction of an unconstitutional condition," not "accelerated release"); Cunningham v. Wilson, 326 F. App'x 948, 949 (7th Cir. 2009) ("[R]elease from custody is not a form of relief available . . . to a federal inmate challenging the conditions of his

-15-

confinement."); Glaus v. Anderson, 408 F.3d 382, 387 (7th Cir. 2005) ("If an inmate established that his medical treatment amounts to cruel and unusual punishment, the appropriate remedy would be to call for proper treatment, or to award him damages; release from custody is not an option."); Gomez v. United States, 899 F.2d 1124, 1126 (11th Cir. 1990) ("Assuming *arguendo* that his allegations of mistreatment demonstrate cruel and unusual punishment, the petitioner still would not be entitled to release from prison. The appropriate remedy would be to enjoin continuance of any practices or require correction of any conditions causing him cruel and unusual punishment."). The court cannot perceive of any circumstances in which release of Mr. White from prison would be warranted.

Regarding the plaintiffs' other forms of injunctive relief, the plaintiffs are seeking affirmative relief that would alter the status quo, which is disfavored. The broad and far-reaching relief sought by the plaintiffs also runs counter to the PLRA's requirement that the relief be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(2).

### III. RECOMMENDATION

For the above reasons, the court recommends that the plaintiffs' Motions for Emergency Relief be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

May 28, 2013
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, A PARTY MAY SERVE AND FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. FED. R. CIV. P. 72(B)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**