IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

JUDY WHITE,                          )
                                     )
        Plaintiff,                   )
                                     )
vs.                                  )        No. 13-cv-2173-JDT-tmp
                                     )
DELORES STEPHENS, et al.,            )
                                     )
        Defendants.                  )

---

**REPORT AND RECOMMENDATION**

---

Before the court by order of reference are the following motions: plaintiff Judy White's Motion for Default Judgment against defendant Charles Wallace, M.D. (ECF No. 51); Dr. Wallace's Motion to Dismiss (ECF No. 52); and Mrs. White's "Motion to Strike as to the Purported Response and Motion to Dismiss of Defendant Wallace" ("Motion to Strike") (ECF No. 60).[1]

For the following reasons, it is recommended that Mrs. White's motions be denied and Dr. Wallace's motion be granted.

### I. PROPOSED FINDINGS OF FACT

#### A. Allegations in the Complaint

---

[1]Mrs. White's Motion for Default Judgment and Motion to Strike are brought by Mrs. White and "joined by Gary White," who is Mrs. White's husband and was a co-plaintiff on the original complaint. However, on June 19, 2013, the court ordered Mr. White's claims severed from Mrs. White's claims, and opened a new case on Mr. White's claims. (Civ. No. 2:13-cv-2441.) Since then, the court has dismissed Mr. White's case. Only Mrs. White remains as a plaintiff in the present action.

Judy White is a resident of Jefferson County, Alabama. Her 66 year old husband, Gary White, is currently a federal prisoner. From September 2010 to December 2011, he was incarcerated at the federal prison in Edgefield, South Carolina. Beginning on December 28, 2011, Mr. White was moved to federal prisons in Atlanta, Georgia, Oklahoma City, Oklahoma, and Millington, Tennessee. In February 2013, he was moved to the federal prison in Forrest City, Arkansas, where he is currently housed. On March 19, 2013, the plaintiffs jointly filed a *pro se* complaint against numerous federal prison officials, prison medical staff, prison counselors and case managers, prison facilities, Attorney General Eric Holder, the Department of Justice, and President Barack Obama. Plaintiffs allege that Mr. White was transferred to various federal prison facilities without notice to Mrs. White or to Brian Cloud (his civil attorney in Alabama). They claim Mr. White was harmed and injured by being locked in solitary confinement; denied his prescribed medication; denied adequate food, shelter and clothing; and subjected to outrageous and abusive treatment, including being compelled to stand outside in freezing temperatures in the rain dressed only in a thin paper jumpsuit while shackled and handcuffed. They contend that on numerous occasions, Mrs. White and Mr. Cloud have been denied access to Mr. White, including being denied visitation, telephone calls, and email communications. Plaintiffs claim that prison personnel have repeatedly harassed

Mrs. White when she has gone to visit her husband in prison. Other forms of abuse and harassment alleged in the complaint include denying Mr. White the chance to attend his mother's funeral and not allowing him to leave prison to be with his wife when she had to undergo major surgery. Plaintiffs also make numerous allegations regarding fraud and corruption within the Bureau of Prisons ("BOP").

Plaintiffs claim that various prison officials and medical personnel have withheld necessary prescribed medication, falsified his medical records, wrongfully disclosed his medical records, and refused to provide Mrs. White and Mr. Cloud with his medical records despite repeated requests for those records. Plaintiffs allege that prior to his imprisonment in 2010, Mr. White had a prostate-specific antigen ("PSA") level of 2.0, and that several months later, his PSA level had risen to 5.32, indicating that he might have prostate cancer. They contend that in November 2012, Mr. White was finally allowed to be seen by a private, non-BOP urologist in Memphis, Tennessee, defendant Dr. Charles Wallace. During that doctor's visit, Dr. Wallace called Mrs. White, at which time the three of them spoke over the speaker phone about Mr. White's medical condition and treatment. Plaintiffs claim that after Mr. White returned to the prison from that doctor's visit, prison officials took away the prescription samples he had received from Dr. Wallace. He was later placed in solitary confinement,

allegedly because the Whites had engaged in discussions about a pending lawsuit when he was seen by Dr. Wallace, in violation of BOP regulations. Plaintiffs claim Mr. White was brought before the Disciplinary Hearing Officer ("DHO") without notice, and that the hearing itself was conducted without permitting Mr. White to call witnesses, conduct research, or present evidence in his defense. At the conclusion of the hearing, Mr. White was punished with, among other penalties, the loss of six months of visitation, telephone, and email privileges. Plaintiffs claim that the prison has denied Mr. White his "DHO Report" and has prohibited him from filing an appeal of the DHO's ruling.

The 94-page complaint includes 44 counts. For counts 1 through 35, the plaintiffs attempt to incorporate by reference counts 1 through 35 contained in other complaints relating to Mr. White's prison conditions that they filed in the District Court for the District of South Carolina.[2] The remaining counts allege causes of action for conspiracy, obstruction of justice, violation of the Americans with Disabilities Act ("ADA"), assault, conversion

---

[2]The civil docket for the District of South Carolina reflects two cases filed by the Whites against prison officials, White v. Mitchell (case no. 8:12-cv-2840-TMC, complaint filed Oct. 1, 2012) and White v. Miller (case no. 8:11-cv-00144-HMH, complaint filed Jan. 1, 2011). On January 11, 2013, the court dismissed the Mitchell case, and no appeal was taken. On June 20, 2011, the court dismissed Miller. The Whites appealed the dismissal in Miller, and the Court of Appeals for the Fourth Circuit affirmed the dismissal. See White v. Mackelburg, 459 F. App'x 285 (4th Cir. 2011).

of property, theft, "outrage," intentional infliction of emotional distress, false imprisonment, and 42 U.S.C. § 1983 claims based on Eighth Amendment violations. Plaintiffs ask that the court release Mr. White from custody, declare the Prison Litigation Reform Act ("PLRA") unconstitutional, and award damages.

With regard to Dr. Wallace, the specific allegations in the complaint which relate to him are as follows:

80. On or about October 24, 2012, Mr. White was summoned and asked to sign two documents prepared by the prison Defendants, a "Furlough Application - Approval and Record" showing he was being referred and scheduled to be seen by Charles Wallace, Jr., M.D. at a urology clinic in Memphis, and a "Conditions of Furlough." Mr. White requested and was refused copies of these documents, nor was he allowed to retain the documents and make the copies himself. Mr. White saw the documents only briefly on October 24, 2012. See Exhibit B1-B2, attached and incorporated by reference as if fully set forth herein.

81. Mr. White and Mrs. White were understandably very concerned, being aware that another camp prisoner had recently been taken to see a BOP-chosen consulting urologist in Memphis, resulting in the prisoner developing a severe infection requiring hospitalization to save his life. The other prisoner was subsequently returned to the prison camp with a colostomy bag.

82. Mr. White shared the information about the consulting doctor with his wife, asking her to research the doctor. Mrs. White did so, sending the information to her husband on October 27, 2012 by e-mail monitored by the prison Defendants. . . .

83. On November 26th, Mr. White was notified that his appointment with the urologist would be the following day. . . . Because of Mr. White's memory and cognitive impairment problems, prior to prison, Mrs. White went with her husband for all of his non-routine medical appointments and helped him with his medical history and treatment decisions. Mrs. White is Mr. White's Attorney in Fact, personal representative, and holds his medical

power of attorney. Because of her recent major surgery, however, Mrs. White needed to refrain from traveling.

84. On the morning of November 27, 2012, Mr. White was driven by another prisoner . . . to the doctor's office in Memphis, where Mr. White was dropped off alone, and given a telephone number to call to be picked up when the appointment was finished.

85. Prior to being called to see the doctor, Mr. White was asked to sign and not only did not sign, but actively declined to sign a consent and authorization to release his medical records and information to the prison Defendants.

86. After Mr. White was called back to see the doctor and prior to consenting to examination by Wallace, Mr. White indicated he wanted his wife to participate in the appointment by telephone, as she was unable to be present personally. Wallace called Mrs. White from his cell phone, told her that Mr. White was in his office and wanted her to be included in the discussion about his treatment and decide on consent. To reiterate, Mrs. White is Mr. White's/the patient's wife, personal representative, and holder of his [power of attorney] and medical [power of attorney]. After making sure Mr. White was not in handcuffs, Mrs. White directly asked Wallace whether he was an employee or agent of the BOP. Wallace said no, he was a private physician. Mrs. White asked Wallace to confirm that Mr. White was his <u>patient</u>, not a prisoner, as Wallace was not an agent or employee of the BOP. Wallace again said no, he was a private physician and Mr. White was a patient. Mrs. White asked Wallace if he was the same doctor who had treated the other prisoner who got the severe infection. Wallace responded, stating that he didn't know anything about that. Mrs. White informed Wallace about the other prisoner's circumstances, then asked again whether he was the same doctor. Wallace stated he was not the same doctor and again stated that he didn't know anything about it. Mrs. White asked about Wallace's medical credentials, including whether he was licensed and where. Mrs. White told Wallace about Mr. White's urology history, his pre-imprisonment biopsy, treatment and PSA levels, telling Wallace that Mr. White's PSA had never been so high and that his medication had been withheld for over two years. Mrs. White mentioned to Wallace that the withholding of Mr. White's prescription medications was illegal medical

abuse and that the Whites were suing the BOP as the result.  Mrs. White asked if Mr. White could be included in the discussion between Wallace and Mrs. White. Wallace put Mrs. White on speaker-phone.  Mrs. White asked Wallace if he intended to biopsy Mr. White.  He stated that he did not plan to do so.  She asked what Wallace intended to do.  He said he wanted to examine Mr. White.  Mrs. White asked for specifics, apologized for not being there and informed Wallace she was recovering from surgery.  Wallace spoke in detail about his specific plans for examining Mr. White.  Mrs. White asked Wallace and Mr. White if Mr. White had discussed disclosure with Wallace.  Mr. White said he had told the doctor and his office staff not to disclose his medical information to anyone other than Mrs. White and further stated he had declined to sign the form consenting to disclosure to the prison.  Mrs. White told Wallace she is Mr. White's Attorney in Fact and holds his medical [power of attorney].  After speaking directly with Wallace to be sure he understood the limitations on disclosure and upon understanding what the doctor planned to do in examining Mr. White, Mrs. White asked her husband if he was comfortable with allowing Wallace to do only what had been discussed.  Mr. White stated he was, and the call was completed.  Mrs. White's telephone records show the call lasted seven (7) minutes, rounded up. . . . .

87.    Defendant Wallace did not express any disagreement or issue with the limitation on disclosure; however, in violation of Mr. White's HIPAA [Health Insurance Portability and Accountability Act of 1996] and Privacy Act rights [5 U.S.C. § 552a], he subsequently did exactly as Mr. White and Mrs. White had directed he could not do – disclosure to the prison Defendants.  The consent for examination and treatment was contingent upon compliance with the Whites' directive not to disclose.

88.    Wallace and his medical staff stated that they were not allowed to test Mr. White's blood to determine his PSA, as such testing was prohibited by the BOP, evidencing the Defendants' interference with proper medical evaluation and care.  Having provided false information to Wallace in documents understating Mr. White's PSA to be 4.17 when it was, in fact, 5.32, the Defendants obstructed Wallace from testing that would have been necessary for any independent evaluation and testing that would have established the information provided by the Defendants was false and unreliable.

89.   After examining Mr. White, Wallace prescribed the same and exact medication Mr. White was taking prior to imprisonment, the same and exact medication that the consulting urologist in South Carolina had prescribed, and the same and exact medication that had already been withheld from Mr. White for two years and two months, to Mr. White's extreme detriment.   Wallace told Mr. White that he needed to take the exact medication <u>as prescribed</u>, not anything else – a substitute or generic – and Wallace then gave Mr. White enough pharmaceutical samples to last a month when Mr. White told Wallace he didn't know if the prison would provide it.   After finishing the appointment, Mr. White used the doctor's office telephone to call the number provided by the prison and waited until they sent the prisoner in the white Ford Escape to pick Mr. White up approximately half an hour later.

. . . .

92.   . . . [M]r. White did not call his wife or anyone at all, other than the prison.   The doctor – Wallace – called Mrs. White.

. . . .

109.   Later on the morning of January 11, 2013, Defendant Brooks [a counselor at the prison] called Mrs. White and stated that Mr. White would like to speak with her.   Mr. White informed Mrs. White that he was in solitary confinement and had been charged with two serious violations based on the doctor's [Dr. Wallace's] call to Mrs. White in November. . . .

. . . .

112.   Mrs. White immediately telephoned Charles Wallace and spoke directly with him.   Wallace stated to Mrs. White when confronted with the false accusations, "I didn't say that," agreed that he had personally placed the call and that no business had been conducted during the call, and stated he would "call the man" and get the matter cleared up.

## B.   Motions

On or about April 2, 2013, Mrs. White mailed the summons and complaint to Dr. Wallace via U.S. Priority Mail with signature

confirmation required, and addressed the package to Dr. Wallace at 1325 Eastmoreland Avenue, Memphis, Tennessee 38104. She subsequently filed with the court as proof of service the summons and U.S. Postal Service records showing that the package was delivered on April 4, 2013, to the Eastmoreland address and that an "Elagnew" signed for the package. (ECF No. 36-8, Ex. H.)

On June 25, 2013, Mrs. White filed a Motion for Default Judgment against Dr. Wallace. In the motion, she argues that "[b]ecause some of the Defendants – but not Defendant Wallace – are federal employees, under the Federal Rules of Civil Procedure, the Defendants had sixty days from the date of service within which to file answers." She asserts that those sixty days expired on June 3, 2013. Mrs. White asks the court to enter default judgment against Dr. Wallace for his failure to respond to the complaint.

On June 26, 2013, Dr. Wallace filed a Motion to Dismiss. Dr. Wallace argues that Mrs. White fails to state a claim against him upon which relief can be granted and that process and service of process were insufficient. He further argues that under Tennessee law, although service can be accomplished by mail, Tenn. R. Civ. P. 4.04(10) provides that service by mail cannot be the basis for the entry default judgment unless the record contains a return receipt showing personal acceptance by the defendant or by a person designated by Rule 4.04 or statute. Dr. Wallace states that because Mrs. White cannot show that he personally accepted delivery

of the mail package or that it was accepted by someone authorized under Rule 4.04 or by statute, Mrs. White cannot obtain a default judgment against him.

On June 27, Dr. Wallace filed a response in opposition to Mrs. White's Motion for Default Judgment, again asserting that Mrs. White has failed to state a claim against him and that process was insufficient. Dr. Wallace also argues that based on the court's order Granting Defendants' Motion for Extension of Time to Answer or Otherwise Plead entered on May 31, 2013 (ECF No. 45), all defendants (including Dr. Wallace) had an additional sixty days from May 30, 2013, to respond to the complaint.

On July 8, 2013, Mrs. White filed her Motion to Strike. In that motion, she argues that Dr. Wallace was not included among the defendants who were granted an additional sixty days to answer or otherwise plead. She also asserts that Dr. Wallace's attorney never filed a notice of appearance, service was sufficient, and the complaint adequately states claims for relief against Dr. Wallace. Dr. Wallace filed a response in opposition on July 19, 2013, raising many of the same arguments contained in his previous filings. He also argues that the Motion for Default Judgment should be denied because a necessary prerequisite to the court entering a default judgment pursuant to Rule 55(b) is entry of a technical default by the Clerk of the Court.

## II.  PROPOSED CONCLUSIONS OF LAW

**A.   Authority of the Magistrate Judge**

As an initial matter, Mrs. White states in her Motion to Strike, "Plaintiffs never consented to any magistrate, nor do they or will they consent," and argues that the undersigned Magistrate Judge exceeded his authority by making rulings in this case without her or her husband's consent.  28 U.S.C. § 636(b)(1)(A) authorizes a Magistrate Judge to hear and determine any non-dispositive pretrial motion pending before the court.  28 U.S.C. § 636(b)(1)(A).  With regard to dispositive motions, such as a motion for injunctive relief, a Magistrate Judge may submit to the District Judge proposed findings of fact and recommendations for disposition.  28 U.S.C. § 636(b)(1)(B)-(C).  Consent of the parties is not required for a Magistrate Judge to rule on nondispositive motions or to submit a report and recommendation on a dispositive motion to a District Judge.  <u>See, e.g.</u>, <u>Hardy v. Marble</u>, No. 11-13008, 2012 WL 3870568, at *2 (E.D. Mich. Sept. 6, 2012) ("[C]onsent of the parties is not required to refer a matter to a magistrate judge for a report and recommendation under Section 636(b)."); <u>see also</u> <u>Vitols v. Citizens Banking Co.</u>, 984 F.2d 168, 169 (6th Cir. 1993) (explaining the difference between referrals under § 636(c)(1), for which consent of the parties is required, and references under § 636(b), which are limited to nondispositive pretrial matters or recommendations on dispositive motions).  By order entered on March 27, 2013, the presiding District Judge

referred to the undersigned Magistrate Judge the management of this case, including "all pretrial matters in [this case] within the Magistrate Judge's jurisdiction pursuant to 28 U.S.C. § 636(b)(1)(A) for determination; and all other pretrial matters in [this case] for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)-(C)." (ECF No. 23, Order Referring Cases.) Pursuant to the District Judge's referral, 28 U.S.C. § 636(b)(1), and Local Rule 72.1 (Rules Governing Duties and Proceedings Before United States Magistrate Judges), the undersigned has entered orders on non-dispositive motions and submitted report and recommendations on dispositive motions. Plaintiffs' consent to the jurisdiction of the Magistrate Judge was not and is not required.

## B. Motion to Strike

Rule 12(f) empowers a court to strike a pleading or portion thereof when it is redundant, immaterial, impertinent, or scandalous. Fed. R. Civ. P. 12(f). "A motion to strike is a drastic remedy that should be used sparingly and only when the purposes of justice require." Driving Sch. Assoc. of Ohio v. Shipley, No. 1:92-CV-00083, 2006 WL 2667017, at *1 (N.D. Ohio Sept. 15, 2006) (citing Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953); Battle v. Nat'l City Bank, 364 F. Supp. 416 (N.D. Ohio 1973)). However, a court has "liberal discretion" to strike such filings as it deems appropriate. Johnson v. Cnty. of Macomb, No. 08-10108, 2008 WL

2064968, at *1 (E.D. Mich. 2008) (citing <u>Stanbury Law Firm v. IRS</u>, 221 F.3d 1059, 1063 (8th Cir. 2000)).  "For example, a motion to strike should be granted where the complaint contains immaterial allegations that have no bearing on the subject matter of the litigation."  <u>Id.</u> (citing <u>Stanbury</u>, 221 F.3d at 1063).

However, Rule 12(f) applies only to pleadings.  As this court explained in <u>Rhea v. Dollar Tree Stores, Inc.</u>:

> The text of Rule 12(f) provides that a motion to strike can only be made with respect to pleadings.  Under Federal Rule of Civil Procedure 7(a), pleadings include the following documents: a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, and a third party answer.  Therefore, under the Federal Rules of Civil Procedure, exhibits attached to motions are not pleadings and are outside the scope of Rule 12(f).

395 F. Supp. 2d 696, 702 n.7 (W.D. Tenn. 2005) (citing <u>Ernst Seidelman Corp. v. Mollison</u>, 10 F.R.D. 426, 427 (S.D. Ohio 1950); <u>Wimberly v. Clark Controller Co.</u>, 364 F.2d 225, 227 (6th Cir. 1966)); <u>see also</u> <u>Fox v. Michigan State Police Dep't</u>, 173 F. App'x 372, 375 (6th Cir. 2006) ("Under Fed. R. Civ. P. 12(f), a court may strike only material that is contained in the pleadings.").  In this case, Mrs. White moves to strike Dr. Wallace's response to her Motion for Default Judgment and Dr. Wallace's Motion to Dismiss.  Neither of these documents are pleadings.  <u>Rouse v. Caruso</u>, No. 06-CV-10961-DT, 2007 WL 209920, at *2 (E.D. Mich. Jan. 24, 2007) ("neither . . . motions nor responses to motions constitute 'pleadings' subject to Rule 12(f)") (citations omitted); <u>Newsom v.</u>

<u>Xenia City School Dist. Bd. of Educ.</u>, No. C-3-95-173, 1996 WL 1089865, at *2 (S.D. Ohio Mar. 25, 1996) ("It is clear under the Federal Rules of Civil Procedure, motions are *not* pleadings, and therefore are not subject to motions to strike under Rule 12(f)") (emphasis in original). Additionally, the court finds that the grounds stated in Mrs. White's Motion to Strike - that Dr. Wallace was not included among the defendants who were granted an additional sixty days to answer or otherwise plead, his attorney never filed a notice of appearance, service was sufficient, and the complaint adequately states claims for relief against him - do not provide a basis for the court to "strike" Dr. Wallace's motion or response. It is recommended that the Motion to Strike be denied.

**C. Motion for Default Judgment**

Rule 55 of the Federal Rules of Civil Procedure governs defaults and default judgments. Section (a) of Rule 55 deals with entry of a technical default by the Clerk, and section (b) deals with entry of a default judgment, either by the Clerk or by the court itself. Entry of a technical default under section (a) is different from, and must precede, entry of a default judgment under section (b). <u>See</u> <u>Arango v. Guzman Travel Advisors</u>, 761 F.2d 1527, 1530 (11th Cir. 1985); <u>Structural Concrete Prods., LLC v. Clarendon Am. Ins. Co.</u>, 244 F.R.D. 317, 328 (E.D. Va. 2007); <u>Atlanta Gas Light Co. v. Semaphore Adver., Inc.</u>, 747 F. Supp. 715, 718 (S.D. Ga. 1990); 10A Charles Alan Wright & Arthur R. Miller, <u>Federal</u>

<u>Practice & Procedure</u> § 2682 (3d ed. 2007) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)."). Entry of a technical default by the Clerk is the "first procedural step on the road to obtaining a default judgment," and must be obtained before a default judgment may be granted. <u>Shepard Claims Serv., Inc. v. William Darrah & Assoc.</u>, 796 F.2d 190, 193 (6th Cir. 1986); <u>see also</u> <u>United Coin Meter Co. v. Seaboard Coastline R.R.</u>, 705 F.2d 839, 844 (6th Cir. 1983); <u>Ortiz v. Lasker</u>, No. 08-CV-6001L, 2008 WL 5110984, at *1 (W.D.N.Y. Dec. 2, 2008); <u>Garrison v. Transunion</u>, No. 08-10859, 2008 WL 4940795, at *1 (E.D. Mich. Nov. 17, 2008); <u>Corsair Memory, Inc. v. Corsair7.com</u>, No. C 08-03460, 2008 WL 4820789, at *2 (N.D. Cal. Nov. 4, 2008); <u>Axact (PVT), Ltd. v. Student Network Res., Inc.</u>, No. 07-5491, 2008 WL 4754907, at *1 (D.N.J. Oct. 22, 2008); <u>Hickman v. Burchett</u>, No. 2:07-cv-743, 2008 WL 926609, at *1 (S.D. Ohio Apr. 4, 2008). In order to obtain an entry of default under Rule 55(a), an application for entry of default must be filed with the Clerk, along with an affidavit or other competent proof of the defendant's failure to plead or otherwise defend the action. The Clerk will examine the application and, if the requirements of Rule 55(a) are met, certify that the defendant is in default. At that time, the plaintiff may file a motion for default judgment, accompanied by the Clerk's certificate of default. Since Mrs. White has not obtained the

entry of default by the Clerk, her Motion for Default Judgment is premature and therefore should be denied.

In addition, the court submits that the motion should be denied because, given the circumstances in which Dr. Wallace was purportedly served with the summons and complaint, Tenn. R. Civ. P. 4.04(10) does not authorize the entry of default judgment. Federal Rule of Civil Procedure 4(e) sets out the methods by which a party may effectuate service on an individual: by delivering a copy of the summons and complaint to the individual personally; by leaving a copy at the individual's dwelling with someone of suitable age and discretion who resides there; by delivering a copy to an agent authorized to receive service of process; or by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made. Fed. R. Civ. P. 4(e)(1)-(2). Mrs. White did not attempt to serve Dr. Wallace by delivering a copy to him personally, leaving a copy at his residence with someone of suitable age, or delivering a copy to his authorized agent. Instead, Mrs. White attempted to serve Dr. Wallace in accordance with Tennessee Rule of Civil Procedure 4.04(10), by mailing the copy of the summons and complaint to the Eastmoreland address. The signature card was apparently signed by someone with the name "Elagnew."

"[S]ervice by mail cannot serve as the basis for a default

-16-

judgment unless there is a return receipt showing personal acceptance by the defendant or by persons designated by Rule 4.04 or by statute." <u>Arch Wood Protection, Inc. v. FlamedXX, LLC</u>, No. 1:10-CV-282, 2012 WL 1071144, at *7 (E.D. Tenn. Feb. 22, 2012) (citing Tenn. R. Civ. P. 4.04(10)). The record does not contain a return receipt or any other evidence showing that Dr. Wallace personally accepted the mail package, or that the person's name who appears on the return receipt qualifies as a person "designated by Rule 4.04 or by statute" to accept service on behalf of Dr. Wallace. Thus, the Motion for Default Judgment should be denied on this additional basis. <u>See</u> <u>Seabrooks v. C.C.A.- Medical Dept.</u>, No. 1:11-0078, 2012 WL 714908, at *2 (M.D. Tenn. Feb. 16, 2012) (recommending that entry of default be set aside because "[t]he record does not contain a return receipt showing personal acceptance by Defendant Layas. Additionally, there is no indication that "Theis," who apparently personally accepted the mailed summons and complaint, is a person designated by Rule 4.04 or statute to receive service of process for Defendant Layas.")

## D.  **Motion to Dismiss**

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement showing that the pleader is entitled to relief. Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted. "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Merely pleading facts that are consistent with a defendant's liability or that permit the court to infer misconduct is insufficient to constitute a plausible claim." <u>HDC, LLC v. City of Ann Arbor</u>, 675 F.3d 608, 611 (6th Cir. 2012) (citing <u>Iqbal</u>, 556 U.S. at 678).

In considering a motion to dismiss under Rule 12(b)(6), the court views the complaint in the light most favorable to the plaintiff, accepts the allegations as true, and draws all reasonable inferences in favor of the plaintiff. <u>KSR Int'l Co. v. Delphi Auto. Sys.</u>, No. 12-2063, 2013 WL 1749336, at *1 (6th Cir. Apr. 23, 2013) (citing <u>Bassett v. Nat'l Collegiate Athletic Ass'n</u>, 528 F.3d 426, 430 (6th Cir. 2008)). "A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." <u>Handy-Clay v. City of Memphis</u>, No. 10-2927-STA-tmp, 2013 WL 2948442, at *4 (W.D. Tenn. June 14, 2013) (quoting <u>Hensley Mfg. v. ProPride, Inc.</u>, 579 F. 3d 603, 609 (6th Cir. 2009)) (internal quotation marks omitted); <u>see also</u> <u>Infection Prevention Techs. v. UVAS, LLC</u>, No. 10-cv-12371, 2011 WL 4360007, at *24 (S.D. Mich. July 25, 2011), <u>report and recommendation adopted</u>, No. 10-

12371, 2011 WL 4360091 (E.D. Mich. Sept. 19, 2011) ("[Plaintiff]
asserts that Defendants' 'actions were in bad faith, willful,
wanton.' But these statements are pure legal conclusions
insufficient to state a claim upon which relief may be granted.")
(internal citations omitted). Therefore, "to state a valid claim,
a complaint must contain either direct or inferential allegations
respecting all the material elements to sustain recovery under some
viable legal theory." Boland v. Holder, 682 F.3d 531, 534-35 (6th
Cir. 2012) (quoting Bredesen, 500 F.3d at 527) (internal quotation
marks omitted).

Here, Mrs. White has failed to state a claim against Dr.
Wallace. The only alleged wrongdoing by Dr. Wallace is that he
disclosed Mr. White's health information to the prison in violation
of Mr. White's HIPAA and Privacy Act rights. That lone allegation
is insufficient to state a claim against Dr. Wallace. First, HIPAA
creates neither an express nor an implied cause of action for
private citizens to enforce its terms. Wilson v. Memphis Light,
Gas & Water, No. 12-2956-STA-tmp, 2013 WL 4782379, at *3 (W.D.
Tenn. Sept. 5, 2013) (citing Johnson v. Dep'ts of Army & Air Force,
465 F. App'x 644, 645 (9th Cir. 2012); Bradley v. Pfizer, Inc., 440
F. App'x 805, 809 (11th Cir. 2011); Carpenter v. Phillips, 419 F.
App'x 658, 658 (7th Cir. 2011); Wilkerson v. Shinseki, 606 F.3d
1256, 1267 n.4 (10th Cir. 2010); Acara v. Banks, 470 F.3d 569, 571
(5th Cir. 2006); Johnson v. Kuehne & Nagel, Inc., No. 11-cv-02317-

STA-cgc, 2012 WL 1022939, at *5 (W.D. Tenn. Mar. 26, 2012)).

Second, the disclosures that Mrs. White alleges were improper were disclosures of the health information of her husband. As explained in the Report and Recommendation on plaintiffs' Ex Parte Motion for Extraordinary Emergency Relief, Mrs. White lacks standing to pursue Mr. White's claims:

> The constitutional and prudential components of standing must be satisfied before a litigant may seek redress in a federal court. Hill v. Pa. Dep't of Corr., No. 13-1066, 2013 WL 1320413, at *1 (3d Cir. Apr. 3, 2013). "Three components comprise the 'irreducible constitutional minimum of standing': an 'injury in fact' that is concrete and particularized and actual or imminent; a causal connection between the injury and the complained-of conduct; and a likely, not speculative, redressability of the injury through a favorable decision." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "Prudential standing requires, inter alia, that a litigant assert his or her own legal rights and not rely on the rights or interests of third parties." Id. (citing Warth v. Seldin, 422 U.S. 490, 499 (1975)). In Hill, plaintiff Donna Hill filed a § 1983 complaint on behalf of her husband, Dwayne Hill, an inmate with the Pennsylvania Department of Corrections. Mrs. Hill claimed that the prison where her husband was housed violated Mr. Hill's civil rights under the Eighth and Fourteenth Amendments because the prison stopped giving Mr. Hill his medication, changed his mental health code for a non-medical reason, moved him from a single-cell to a double-cell, harassed him, employed an insufficient number of mental health professionals, and employed underqualified mental health professionals. Mrs. Hill alleged that the defendants' actions exacerbated Mr. Hill's mental health condition, caused him to have disciplinary problems, and resulted in a suspension of mail and visiting privileges between the Hills. Id. The Magistrate Judge submitted a report and recommendation, in which he recommended that the case be dismissed because Mrs. Hill lacked standing to bring claims on behalf of her husband. The recommendation was adopted by the District Judge, and the Third Circuit affirmed, stating that "[t]he complaint primarily alleged

violations of Mr. Hill's constitutional rights; thus insofar as Mrs. Hill sought to assert Mr. Hill's rights, the District Court correctly concluded that she lacked standing." <u>Id.</u> at 2.

Like the plaintiffs in <u>Hill</u>, the Whites' complaint primarily alleges violations of Mr. White's constitutional rights, and therefore Mrs. White lacks standing to bring these claims on behalf of her husband.

(<u>Id.</u> at 9-10.)  Mrs. White lacks standing to bring a claim against Dr. Wallace based on Dr. Wallace's alleged improper disclosure of Mr. White's health and medical information.  It is submitted that Mrs. White has failed to state a claim against Dr. Wallace, and therefore her complaint as to Dr. Wallace should be dismissed pursuant to Rule 12(b)(6).[3]

### III.  CONCLUSION

For the above reasons, it is recommended that Mrs. White's

---

[3]In her Motion to Strike, Mrs. White contends that the complaint contains other allegations against Dr. Wallace, including failing to follow proper medical procedures and protocol, failing to act in the best interest of Mr. White, committing medical malpractice, and making false and defamatory statements about both Mr. and Mrs. White.  These additional allegations are not set forth in the complaint itself.  Moreover, with regard to the allegations that relate to Dr. Wallace's treatment of Mr. White, Mrs. White lacks standing to bring these claims.  <u>Hill</u>, 2013 WL 1320413, at *2. With regard to the allegations of false and defamatory statements, the complaint does not identify what statements made by Dr. Wallace were allegedly false or defamatory or to whom these unidentified statements were made.  <u>Burt v. MacTavish</u>, 2013 WL 3198147, at *5 (Tenn. Ct. App. June 21, 2013) (citing <u>Sullivan v. Baptist Mem'l Hosp.</u>, 995 S.W.2d 569, 571 (Tenn. 1999)) ("To establish a prima facie case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement.").

motions be denied and Dr. Wallace's motion be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

January 14, 2014
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, A PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. FED. R. CIV. P. 72(b)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**