IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

JUDY WHITE,                          )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        No. 13-cv-2173-JDT-tmp
                                     )
DELORES STEPHENS, et al.,            )
                                     )
        Defendants.                  )

_____

REPORT AND RECOMMENDATION
_____

Before the court is Defendants' Second Motion to Dismiss.[1]
(ECF No. 106.)  Plaintiff Judy White has not filed a response to
the motion.  For the reasons below, it is recommended that the
motion be granted.

I.    PROPOSED FINDINGS OF FACT

A.   Background

Judy White ("Mrs. White") is a resident of Jefferson
County, Alabama.  Her husband, Gary White ("Mr. White"), is a
federal prisoner.  From September 2010 to December 2011, he was

_____

[1]Plaintiff did not file a response to the Second Motion to
Dismiss within twenty-eight days of being served with the
motion, as required by Local Rule 12.1(b).  As a result, on
October 31, 2014, the court entered an Order to Show Cause
ordering plaintiff, within twenty days, to file a response to
the Motion to Dismiss.  (ECF No. 119.)  Plaintiff did not file a
response to the Motion to Dismiss or otherwise respond to the
Order to Show Cause.

incarcerated at the federal prison in Edgefield, South Carolina. Beginning on December 28, 2011, Mr. White was moved to federal prisons in Atlanta, Georgia, Oklahoma City, Oklahoma, and Millington, Tennessee. In February 2013, he was moved to the federal prison in Forrest City, Arkansas. On March 19, 2013, the Whites jointly filed a *pro se* complaint against some twenty Bureau of Prisons ("BOP") employees (including prison medical staff, prison counselors, and case managers), various prison facilities, former Attorney General Eric H. Holder, Jr., the Department of Justice, and President Barack Obama. Plaintiffs alleged Mr. White was transferred to various federal prison facilities without notice to Mrs. White or to Brian Cloud (his civil attorney in Alabama). They claimed Mr. White was harmed and injured by being locked in solitary confinement; denied his prescribed medication; denied adequate food, shelter and clothing; and subjected to outrageous and abusive treatment, including being compelled to stand outside in freezing temperatures in the rain dressed only in a thin paper jumpsuit while shackled and handcuffed. They contended that on numerous occasions, Mrs. White and Mr. Cloud were denied access to Mr. White, including being denied visitation, telephone calls, and email communications. Plaintiffs claimed prison personnel repeatedly harassed Mrs. White when she visited her husband in prison. Other forms of abuse and harassment alleged in the

complaint included denying Mr. White the chance to attend his mother's funeral and not allowing him to leave prison to be with his wife when she had to undergo major surgery. Plaintiffs also made numerous allegations regarding fraud and corruption within the BOP.

Plaintiffs claimed that various prison officials and medical personnel withheld necessary prescribed medication, falsified his medical records, wrongfully disclosed his medical records, and refused to provide Mrs. White and Mr. Cloud with his medical records despite repeated requests for those records. Plaintiffs alleged that prior to his imprisonment in 2010, Mr. White had a prostate-specific antigen ("PSA") level of 2.0, and that several months later, his PSA level had risen to 5.32, indicating he might have prostate cancer. They contended that in November 2012, Mr. White was finally allowed to see a private, non-BOP urologist in Memphis, Tennessee. During that doctor's visit, the urologist called Mrs. White, at which time the three of them spoke over the speaker phone about Mr. White's medical condition and treatment. Plaintiffs claimed that after Mr. White returned to the prison from that doctor's visit, prison officials took away the prescription samples he had received from the urologist. He was later placed in solitary confinement, allegedly because the Whites had engaged in discussions about a pending lawsuit when he was seen by Dr.

Wallace, in violation of BOP regulations. Plaintiffs claimed Mr. White was brought before the Disciplinary Hearing Officer ("DHO") without notice, and that the hearing itself was conducted without permitting Mr. White to call witnesses, conduct research, or present evidence in his defense. At the conclusion of the hearing, Mr. White was punished with, among other penalties, the loss of six months of visitation, telephone privileges, and email privileges. Plaintiffs claimed the prison denied Mr. White his "DHO Report" and prohibited him from filing an appeal of the DHO's ruling.

The 94-page complaint included 44 counts. For counts 1 through 35, the plaintiffs attempted to incorporate by reference counts 1 through 35 contained in other complaints relating to Mr. White's prison conditions that they had filed in the District Court for the District of South Carolina.[2] The other

---

[2]The civil docket for the District of South Carolina reflects two cases filed by the Whites against prison officials, <u>White v. Mitchell</u> (case no. 8:12-cv-2840-TMC, complaint filed Oct. 1, 2012) and <u>White v. Miller</u> (case no. 8:11-cv-00144-HMH, complaint filed Jan. 1, 2011). On January 11, 2013, the court dismissed the <u>Mitchell</u> case, and no appeal was taken. On June 20, 2011, the court dismissed <u>Miller</u>. The Whites appealed the dismissal in <u>Miller</u>, and the Court of Appeals for the Fourth Circuit affirmed the dismissal. <u>See</u> <u>White v. Mackelburg</u>, 459 F. App'x 285 (4th Cir. 2011). Plaintiffs cannot incorporate by reference causes of action contained in cases that have been dismissed and for which final judgments have been entered. <u>See</u> <u>Trent v. Shelby Cnty. Gov't</u>, No. 2:08-cv-2797-JPM-cgc, 2009 WL 6066974, at *1 (W.D. Tenn. Jul. 30, 2009) (citing <u>Rivers v. Bariton Bd. of Educ.</u>, 143 F.3d 1029, 1031 (6th Cir. 1998) and <u>Cane v. Magna Mixer Co.</u>, 71 F.3d 555, 560 (6th Cir. 1995)).

counts alleged causes of action for retaliation for the exercise of First Amendment rights, obstruction of justice, violation of the Americans with Disabilities Act ("ADA"), assault, conversion of property, theft, "outrage," intentional infliction of emotional distress, false imprisonment, and 42 U.S.C. § 1983 claims based on Eighth Amendment violations. Plaintiffs asked that the court release Mr. White from custody, declare the Prison Litigation Reform Act ("PLRA") unconstitutional, and award damages.

The Whites' claims were severed by order of the court on June 19, 2013. (ECF No. 48.) Mr. White's case was dismissed without prejudice on August 2, 2013, because he failed to pay the civil filing fee or file a motion to proceed *in forma pauperis* within 30 days of the severance of his claims from those of Mrs. White. (Case No. 13-cv-2441, ECF No. 8.) Subsequently, the court ordered dismissal of Mrs. White's claims against defendant Dr. Charles Wallace. (ECF No. 97.)

## B. First Motion to Dismiss or, in the Alternative, for Summary Judgment

The remaining defendants then moved to dismiss Mrs. White's complaint in its entirety. (ECF No. 80.) Defendants argued Mrs. White's ADA claim should be dismissed because the ADA is not applicable to federal executive branch agencies and that her assault and sexual assault claims should be dismissed because

she failed to exhaust her administrative remedies. Defendants also argued Mrs. White's allegations of retaliation for having exercised her First Amendment right to free speech should be dismissed, or alternatively that the defendants should be granted summary judgment, because Mrs. White "cannot establish that the actions in question were more than *de minimis* impositions and because the plaintiff cannot establish a causal connection between her protected speech and the actions of the individual defendants." (ECF No. 80 at 9.) The court dismissed Mrs. White's claims brought pursuant to the ADA and/or the Rehabilitation Act of 1973 and her claims for assault and sexual assault under the Federal Tort Claims Act ("FTCA"). (ECF No. 99, Report and Recommendation; ECF No. 107, Order Adopting Report and Recommendation.)

Mrs. White's claim for First Amendment retaliation was allowed to proceed, however.[3] In the report and recommendation, the undersigned noted that in addition to the alleged incidents

---

[3]The court noted in the report and recommendation that the complaint contained other tort claims, including claims for conversion (Count 40), theft (Count 41), intentional infliction of emotional distress (Count 42), and false imprisonment (Count 43), and that the defendants' Motion to Dismiss did not seek dismissal of these other claims. (ECF No. 99 at 24 n.5.) The court's reference to the false imprisonment claim was in error, as that claim related solely to Mr. White, whose claims had been severed from the claims of Mrs. White. In any event, the conversion, theft, and intentional infliction of emotional distress claims were brought on behalf of both Mr. White and Mrs. White. Defendants' Second Motion to Dismiss does not address these three remaining tort claims.

of retaliation identified in the Motion to Dismiss, the complaint contained additional allegations of retaliatory conduct by the defendants that were not addressed in the motion. These included, for example, allegations that Mrs. White and Mr. Cloud were denied opportunities to visit Mr. White and that they were prohibited from communicating with Mr. White in retaliation for Mrs. White's criticisms of the policies and procedures of the defendants. As discussed in the report and recommendation, in order to establish a First Amendment retaliation claim, a plaintiff must show three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. The undersigned noted that the complaint stated Mrs. White on numerous occasions publicly criticized the defendants' policies, procedures, and treatment of her and Mr. White, and that adverse actions were allegedly taken against her and Mr. White in retaliation for her exercising her First Amendment rights. Thus, the undersigned concluded that the complaint sufficiently stated a claim for First Amendment retaliation. Defendants objected to the report and recommendation to the extent it allowed the First Amendment

claims to proceed.  (ECF No. 105.)  The District Judge adopted the report and recommendation, but in doing so, expressly stated that the defendants' objections were better suited to be decided when the court ruled on the pending Second Motion to Dismiss. Subsequently, on October 16, 2014, the court conducted a Rule 16(b) scheduling conference with the parties and entered a scheduling order, setting the deadline for completing discovery for June 30, 2015.  (ECF No. 111.)

## C.    Second Motion to Dismiss

In their present motion, the defendants renew their argument that the complaint fails to state a claim for First Amendment retaliation.  Defendants assert, for the first time, that <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), does not extend to Mrs. White's First Amendment claims.  Additionally, the defendants argue that the factual allegations in the complaint (including the additional allegations of retaliatory conduct that were not addressed in the first Motion to Dismiss) do not meet the requisite pleading standard, and therefore fail to state a claim upon which relief can be granted.  Finally, the defendants argue in the alternative that, at a minimum, the complaint should be dismissed as against all defendants who were not specifically

identified in the complaint as engaging in conduct that forms the basis for the First Amendment claim.[4]

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement showing that the pleader is entitled to relief. Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Merely pleading facts that are consistent with a defendant's liability or that permit the court to infer misconduct is insufficient to constitute a plausible claim." HDC, LLC v. City of Ann Arbor, 675 F.3d 608, 611 (6th Cir. 2012) (citing Iqbal, 556 U.S. at 678).

In considering a motion to dismiss under Rule 12(b)(6), the court views the complaint in the light most favorable to the

---

[4]These defendants would include Johnny Williams, Sarah Culbertson, Edna Prince, Nahem Naimey, Davie Carpenter, I. Brooks, Delorise Fortune, Louis Eichenlaub, Charles Samuels, defendants "Parks," "Coleman," and "Cortez," the Memphis federal prison (Millington), the Mid-Atlantic Regional Office of the Federal Bureau of Prisons, the Department of Justice, former Attorney General Holder, and President Obama.

plaintiff, accepts the allegations as true, and draws all reasonable inferences in favor of the plaintiff. KSR Int'l Co. v. Delphi Auto. Sys., No. 12-2063, 2013 WL 1749336, at *1 (6th Cir. Apr. 23, 2013) (citing Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008)). "A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." Handy-Clay v. City of Memphis, No. 10-2927-STA-tmp, 2013 WL 2948442, at *4 (W.D. Tenn. June 14, 2013) (quoting Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009)) (internal quotation marks omitted); see also Infection Prevention Techs. v. UVAS, LLC, No. 10-cv-12371, 2011 WL 4360007, at *24 (E.D. Mich. July 25, 2011), report and recommendation adopted, No. 10-12371, 2011 WL 4360091 (E.D. Mich. Sept. 19, 2011) ("[Plaintiff] asserts that Defendants' 'actions were in bad faith, willful, wanton.' But these statements are pure legal conclusions insufficient to state a claim upon which relief may be granted.") (internal citations omitted).

**B.    First Amendment Retaliation**

Defendants first argue that Bivens does not extend to First Amendment retaliation claims. A Bivens action is the "federal analog to suits brought against state officials under 42 U.S.C. § 1983," providing plaintiffs a remedy when federal officials

violate a constitutional right. <u>Jerdine v. Fed. Bureau of Investigation</u>, No. 4:11CV00391, 2013 WL 5209894, at *7 (N.D. Ohio Sept. 13, 2013) (quoting <u>Iqbal</u>, 556 U.S. at 675-76). In <u>Bivens</u>, the Supreme Court explained that under appropriate circumstances, courts possess the discretion to create remedial actions against federal officials for violations of constitutional rights, even where Congress has not expressly authorized those specific remedies by statute. <u>See</u> <u>Bush v. Lucas</u>, 462 U.S. 367, 373-74 (1983). The Supreme Court in three instances has drawn upon this power to create a nonstatutory action for money damages against federal officials for constitutional violations. <u>See</u> <u>Bivens</u>, 403 U.S. 388 (Fourth Amendment violation by federal agents); <u>Davis v. Passman</u>, 442 U.S. 228 (1979) (employment discrimination in violation of the Due Process Clause); <u>Carlson v. Green</u>, 446 U.S. 14 (1980) (Eighth Amendment violations by prison officials). The Supreme Court has made clear that there is no "automatic entitlement" to a <u>Bivens</u> remedy, "and in most instances," the Court has "found a <u>Bivens</u> remedy unjustified." <u>Wilkie v. Robbins</u>, 551 U.S. 537, 550 (2007). In deciding whether to apply a <u>Bivens</u> remedy, a court will analyze (1) whether there is any alternative process for safeguarding the constitutional rights at issue; and (2) even if no alternative exists, whether there are special factors that counsel hesitation in creating a judicial remedy. <u>Id.</u>

The Supreme Court has never held that Bivens extends to First Amendment claims, but instead has "several times assumed without deciding that Bivens extends to First Amendment claims." Wood v. Moss, 134 S. Ct. 2056, 2065 (2014); see also Reichle v. Howards, 132 S. Ct. 2088, 2093 n.4 (2012) (same). In one Sixth Circuit case, Hill v. Lappin, 630 F.3d 468 (6th Cir. 2010), the court found that the *pro se* prisoner's complaint sufficiently alleged a First Amendment retaliation claim under Bivens against prison officials. Id. at 469. Even assuming, *arguendo*, that Bivens extends to Mrs. White's First Amendment retaliation claim, the court finds that the complaint fails to state a retaliation claim under the standards set forth in Twombly and Iqbal.

As stated above, to establish a First Amendment retaliation claim, a plaintiff must show that (1) plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); see also Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 372 (6th Cir. 2011) ("Although much of our First Amendment retaliation jurisprudence addresses

claims by public employees and prisoners, the same legal framework applies where, as here, private parties challenge governmental action."). Mrs. White claims she exercised her First Amendment rights in two ways. First, she gave multiple interviews in 2010, 2011, 2012, and 2013, which were published on the website www.OpEdNews.com. In these interviews, she criticized the BOP for the treatment received by Mr. White, the overall conditions of the federal prisons, and the alleged corruption within the prison system.[5] The following paragraphs of the complaint contain the pertinent allegations relating to Mrs. White's public criticisms of the BOP:

> 58. From the time Mr. White's prescription medications were taken and withheld and the medical abuse by prison employees began, Mrs. White has attempted to get the matter resolved, to protect her husband's life and health. In the course of seeking help, Mrs. White contacted the president and other high ranking officials, both directly and publicly. Mrs. White has every right and the obligation to help her husband, and no right or privilege of Mrs. White's has been limited or compromised. Mrs. White has exercised her First Amendment rights, including making known the conditions of Mr. White's confinement and the corruption of prison employees; she has been illegally retaliated against by prison employees as the result of doing so, and Mr. White has been illegally abused and retaliated against due to Mrs. White's actions and efforts. Mrs. White has participated in a series of interviews making known the conditions of her husband's and other prisoners' confinement in federal prisons and exposing corruption by prison employees.

---

[5]Mrs. White attached copies of these interviews as exhibits to her complaint.

See Exhibit A1-A30, attached and incorporated by reference as if fully set forth herein.

59. In the course of trying to help her husband, Mrs. White has become an advocate for abused prisoners and their families. Following publication of the interview in which she shared the Christmas visit abuse and the confiscation of her scarf, the prison employees at Millington were seen reading print-outs, with one commenting that it was not just there, but the interview was getting attention throughout the BOP. The prison employees ceased and desisted from harassing visitors with scarves and garments with hoods, as prisoners and visitors filed complaints about the harassment of their visitors. Both Mr. White and Mrs. White were thanked by other family members and prisoners for standing up for all of them. But Mr. White was subjected to threatening and menacing behavior by prison employees.

94. When Mrs. White returned to the prison on November 27th, the medical pharmaceutical samples provided by the doctor were taken from Mr. White by the prison Defendants and he was told by the prison Defendants that he could not have the medication he so desperately needs. It was free, at no cost to the taxpayers, but withheld just for the sake of harming Mr. White, continuing the pattern and practice of medical abuse and Eighth Amendment violations against Mr. White. The prison Defendants told Mr. White that only if the regional office approved would he ever be given the prescribed mediation, despite the Defendants' actual knowledge that their own selected consulting urologist had prescribed the medication and despite the Defendants' actual knowledge that Mr. White's medical condition required intervention, medication and treatment. Mr. White called his wife from the monitored prison telephone and let her know about this abuse, asking her to help. Mrs. White began making calls to the regional and Washington offices, and later sent e-mail messages.

95. Mrs. White's next published interview referred to Mr. White's "horrible, terrible, very bad week."

97. On Christmas Eve, the "Scrooged" interview was published. And at the end, was the teaser that in the

next installment, Mrs. White would discuss "The Flood."

156. The Defendants, including the South Carolina Defendants and others yet to be ascertained, engaged and continue in a pattern and practice of acts and commissions in furtherance of the criminal conspiracy born in South Carolina intended to deny and deprive the Plaintiffs of their First Amendment rights – to "silence" them and to cause them to cease and desist from making known the conditions of Mr. White's confinement, the corruption and wrong-doing of the Defendants and others, to the extreme harm and detriment of the Plaintiffs.

157. The Defendants engaged and continue in a pattern and practice of acts and omissions in furtherance of a criminal conspiracy to retaliate against the Plaintiffs for their exercise of their First Amendment rights, including harassing and abusing Mrs. White directly but also retaliating against Mr. White due to Mrs. White's public statements and disclosures, in violation of federal law and to the extreme harm and injury and to the detriment of the Plaintiffs.

(Compl. ¶¶ 58-59, 94-95, 97, 156-157.)   Second, Mrs. White made complaints to various prison officials regarding her efforts to obtain handicap parking in the employee parking lot and her treatment during the security check-in process when visiting Mr. White.[6]

Defendants do not contend the complaint fails to sufficiently allege that Mrs. White engaged in conduct protected by the First Amendment.   Instead, they argue the complaint fails

---

[6]A more detailed discussion of the sections of the complaint that contain the allegations relating to Mrs. White's complaints about the handicap parking and treatment during the security check-in process can be found in the report and recommendation at ECF No. 99, pages 25-26.

to allege facts sufficient to satisfy the second and third elements of a First Amendment retaliation claim. The court finds that the complaint contains sufficient facts to plausibly show that Mrs. White engaged in protected conduct.

Regarding the second element – whether an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct – the Sixth Circuit has explained that

> Examples of adverse actions that this Court has held sufficient to meet the "person of ordinary firmness" standard include initiating a retaliatory transfer to another prison when it will result in foreseeable negative consequences to the prisoner, threatening to impose disciplinary sanctions, issuing major misconduct reports that could result in loss of disciplinary credits, and threatening the use of physical force. On the other hand, this Court has opined that "prisoners are expected to endure more than the average citizen," and so not every objectionable act directed at a prisoner constitutes adverse action sufficient to deter a person of ordinary firmness from engaging in protected activities. Thus, "the single search of a prison cubicle would not deter a person of 'ordinary firmness' from pursuing constitutional grievances." Other routine inconveniences of prison life also do not constitute adverse action. <u>See, e.g.</u>, <u>Hix v. Tenn. Dep't of Corr.</u>, 196 Fed. Appx. 350, 358 (6th Cir. 2006) (unpublished) (transfer of inmate to another prison in the absence of "foreseeable consequences to the transfer that would inhibit the prisoner's ability to access the courts" is not adverse action); <u>Harbin–Bey v. Rutter</u>, 420 F.3d 571, 579–80 (6th Cir. 2005) (defendant's filing of "Notices of Intent to Conduct an Administrative Hearing," which did not result in loss of inmate privileges, did not qualify as "adverse action").

Reynolds-Bey v. Harris, 428 F. App'x 493, 503 (6th Cir. 2011) (internal citations omitted). The court finds the complaint satisfies this second element to the extent the First Amendment claim is based on allegations that Mr. White was transferred to multiple prisons, denied medical care and medication, placed in solitary confinement, and denied the ability to communicate with Mrs. White and his attorney. See, e.g., Hill, 630 F.3d at 473 ("Even though a prisoner has no inherent constitutional right to avoid segregated housing or prison transfers, the BOP may not place the prisoner in segregated housing or transfer him to another prison as a means of retaliating against him for exercising his First Amendment rights."). Although these alleged adverse actions were primarily directed at Mr. White and affected his own prison conditions, such actions, if in fact taken in retaliation for public criticisms of the prison system made by Mrs. White, would deter Mrs. White from continuing to exercise her First Amendment rights.

However, the court finds the complaint fails to meet this second element to the extent the alleged action includes Mrs. White's treatment by prison officials after she complained about the handicap parking situation and her treatment during the security check-in process when visiting Mr. White. Whether an alleged adverse action is sufficient to deter a person of ordinary firmness "is generally a question of fact," but when

the alleged adverse action is "inconsequential," resulting in nothing more than a *de minimis* injury, the claim is properly dismissed as a matter of law. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583-84 (6th Cir. 2012); see also Bell v. Johnson, 308 F.3d 594, 602 (6th Cir. 2002) ("[S]ome adverse actions are so *de minimis* that they do not give rise to constitutionally cognizable injuries."). Mrs. White alleges that she was subjected to what she perceived were invasive pat-down searches (Compl. ¶ 48); she was told she could be subjected to a strip search if she wore her heart monitor during a particular visit (Compl. ¶ 51); she was instructed on one occasion to button up her golf-style shirt because "V-neck" tops were prohibited (Compl. ¶ 54); she was instructed on one occasion to not bring tissues into the visitation area (Compl. ¶ 55); she was prohibited on one occasion from wearing a velour pantsuit because visitors are prohibited from wearing sweatsuits (Compl. ¶ 56); and she was told she could not wear a scarf during a particular visit at Christmas (Compl. ¶ 57). The court finds that, as a matter of law, these actions by prison officers would not deter a person of ordinary firmness from continuing to exercise her First Amendment rights.[7]

_____

[7]In analyzing the defendants' arguments in support of dismissing the First Amendment retaliation claim in their first Motion to Dismiss, the undersigned previously observed that "[w]hile the Defendants have submitted declarations from various Defendants

As to the third element, the court finds the complaint fails to adequately allege facts that would plausibly show that any adverse action was motivated at least in part by Mrs. White's constitutionally protected activity. The third element of a First Amendment retaliation claim "addresses whether the defendants' subjective motivation for taking the adverse action was at least in part to retaliate against the [plaintiff] for engaging in protected conduct." Hill, 630 F.3d at 475 (citing Thaddeus-X, 175 F.3d at 399). As the Sixth Circuit stated in Hill, in order to state a claim for First Amendment retaliation, a plaintiff must identify in the complaint some evidence (either direct or circumstantial) of retaliatory motive; "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a . . . claim." Id. (quoting Harbin-Bey, 420 F.3d at 580). "[C]ircumstantial evidence can include the disparate treatment of similarly situated

---

in support of their motion, the parties have not yet had an opportunity to engage in discovery." (ECF No. 99 at 28.) The declarations filed by defendants Adams, Davis, Liptak, and Goetz described the prison's protocol for conducting searches of visitors and explained that the officers strictly followed the protocol in their treatment of Mrs. White. (ECF No. 80-2, 80-3-, 80-4, 80-5.) The court has since entered a scheduling order setting discovery deadlines. Mrs. White has not alleged that discovery is necessary to resolve this issue, and as mentioned above, she has not responded to the Second Motion to Dismiss. In any event, the court's finding that these actions would not deter a person of ordinary firmness from continuing to exercise her First Amendment rights is based on the allegations in the complaint, and not on the defendants' declarations.

individuals or the temporal proximity between the [plaintiff's] conduct and the official's adverse action." Hill, 630 F.3d at 475 (citing Thaddeus-X, 175 F.3d at 399). "Although this court has concluded that evidence of temporal proximity between filing of grievances and the adverse action provides some support for establishing retaliatory motive, it has been reluctant to find that such evidence alone establishes retaliatory motive." Id. (citing Holzemer v. City of Memphis, 621 F.3d 512, 525-26 (6th Cir. 2010)). In Hill, the court found that plaintiff's complaint sufficiently pleaded a retaliatory motive for the adverse action because it identified evidentiary facts to support a retaliatory motive. Specifically, the complaint alleged the following facts: (1) plaintiff was placed in segregated housing right after he filed a complaint against a prison staff member, which showed temporal proximity; (2) he was treated differently from other "similarly situated" prisoners who were involved in the same investigation and who were sent back to general population, while plaintiff was recommended for transfer to the lock-down unit; and (3) two staff members made statements about transferring plaintiff to the lock-down unit that the court construed as direct evidence of a retaliatory motive. Id. at 476.

In the present case, Mrs. White's complaint contains no allegations of direct evidence of retaliatory motive. Nor does

the complaint identify circumstantial evidence of retaliatory motive, such as evidence of disparate treatment of similarly situated individuals or temporal proximity. The complaint does not allege which, if any, defendant was aware of her interviews with OpEdNews, when those defendant(s) became aware of those interviews, or what action any particular defendant took in response to Mrs. White's criticisms contained in those interviews. The complaint does not contain facts to plausibly show that the individuals responsible for making the prison transfer decisions, medical care decisions, disciplinary decisions, and decisions regarding Mr. White's visitation and communication privileges were aware of Mrs. White's interviews or took action in response to those interviews. The complaint's vague and conclusory references to Mrs. White notifying the President and other high ranking officials about the abuse and to unnamed prison employees commenting about one of her interviews fail to sufficiently plead facts to plausibly show a retaliatory motive by the defendants. See Ctr. for Bio-Ethical Reform, 648 F.3d at 377 (stating that "vague and conclusory allegations of nefarious intent and motivation by officials at the highest levels of the federal government are not well-pleaded, and are therefore insufficient" to satisfy third element of First Amendment retaliation claim); Jones v. Caruso, No. 1:10-cv-812, 2011 WL 1467647, at *9 (W.D. Mich. April 14,

2011) (finding that plaintiff failed to state First Amendment retaliation claim where plaintiff failed to allege facts describing the circumstances of his grievances and failed to show a causal connection between the transfer to administrative segregation and the filing of his grievances). Thus, the complaint fails to state a claim for First Amendment retaliation.

### III.  RECOMMENDATION

For the reasons above, it is recommended that the defendants' motion be granted and that the First Amendment retaliation claim be dismissed.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

August 28, 2015
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS.  ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2).  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**